UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEMIDAYO OLUWAMUYIWA AROWOSEGBE,<br><br>　　　　　　　　　　Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>　　　　　　　　　　Respondents. | Case No.:　26-CV-3104 JAO (JLB)<br><br>**ORDER GRANTING WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Before the Court is Petitioner Temidayo Oluwamuyiwa Arowosegbe's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Also before the Court is Respondents Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security), Todd Blanche's (Acting Attorney General of the United States), Todd M. Lyon's (Director, Immigration and Customs Enforcement ("ICE")), Jesus Rocha's (Acting Field Office Director ICE, San Diego Field Office), and Christopher LaRose's (Warden of Otay Mesa Detention Center) (collectively, "Respondents" or the "Government") Return to the Petition, ECF No. 6, and Petitioner's Traverse, ECF No. 7.

For the following reasons, the Court **GRANTS** the Petition.

## BACKGROUND

Petitioner is a citizen of Nigeria who was admitted to the United States on a student visa in 2015. *See* ECF No. 1 at 28 ¶¶ 1–2; ECF No. 6-2 ¶ 4. They,[1] however, abandoned their studies after a few months but remained in the country. In March 2017, ICE arrested Petitioner, placed them in custody, and initiated removal proceedings. *See* ECF No. 6-2 ¶ 5. Petitioner was released on bond during the removal proceedings. *See id.* ¶ 6. In front of an Immigration Judge, Petitioner sought asylum and withholding of removal on account of being transgender and queer. *See* ECF No. 1 at 28 ¶ 3. The Immigration Judge denied Petitioner's asylum application and ordered them removed to Nigeria but granted withholding of removal. *See* ECF No. 6-2 ¶ 7; ECF No. 6-1 at 6. Both parties waived appeal, rendering the removal order final. *See* ECF No. 6-2 ¶ 7.

It appears the government never re-detained Petitioner or made any serious effort to remove them from the country until May 2026. *See* ECF No. 1 at 28 ¶ 4. Instead, Petitioner attended yearly check-ins with ICE. *See id.* Then, in January 2026, at one of these check-ins, ICE put a wrist monitor on Petitioner pursuant to the Intensive Supervision Appearance Program ("ISAP"). *See id.* ¶ 5. Under ISAP, Petitioner had to check in twice a month and perform twice-daily virtual check-ins; it is undisputed that they did so. *See id.*

On May 15, 2026, Petitioner received a message from their ISAP officer that the officer needed to see Petitioner right away. *See id.* ¶ 6. At the office, Petitioner found three or four ICE officers waiting for them. *See id.* One of the officers told Petitioner that the Government had found a third country for Petitioner's removal. *See id.* The officers didn't know which country though and told Petitioner that Petitioner would find out in detention. *See id.* The officers also handed Petitioner a piece of paper that said "Notice of Revocation of Release" and told Petitioner that they "had an aggravated felony." *See id.* Petitioner explained that they never had a felony and that, because of

---

[1] Petitioner uses "they" to refer to themselves in the Petition, and male pronouns in the Traverse. *See generally* ECF Nos. 1, 7. The Court follows Petitioner's practice from the Petition.

26-CV-3104 JAO (JLB)

their gender dysphoria, they feared being deported. *See id.* The officers just wrote down what Petitioner had said, remarked "[i]t is what it is," and responded that Petitioner would need to tell officials at the detention facility. *See id.* ¶¶ 6–7.

In their Return, Respondents include the Notice of Revocation of Release issued on May 15, the day of Petitioner's detention. The ICE deportation officer that filled out the form states that Petitioner had previously been released on an order of supervision ("OSUP") on February 1, 2018, and then checks boxes indicating that ICE was revoking Petitioner's release pursuant to C.F.R. § 241.13(i) because "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future." *See* ECF No. 6-1 at 9. The deportation officer did not check the boxes indicating that ICE had obtained travel documents or that ICE was seeking travel documents for removal to any particular country. *See id.* at 9–10. The Court includes a screenshot for clarity:

☒ Your release has been revoked pursuant to 8 C.F.R. § 241.13(i), for the following reason(s):
    ☐ You violated a condition of your release. Specifically, you:
    (Information about how condition of release violated)

☒ Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future.
    ☐ ICE has obtained a travel document and scheduled your removal to take place no later than:
    _____
    Date (MM/DD/YYYY)

ICE Form 71-091 (1/26)                                                                                          Page 1 of 2

    ☐ ICE is seeking a travel document to effect your expeditious removal to _____
                                                                         Country of Removal

*See id.* The Notice also indicated that Petitioner would be "afforded an informal interview" on that same date in which Petitioner could "respond to the reasons for revocation." *See id.* at 10.

26-CV-3104 JAO (JLB)

At the informal interview, Petitioner apparently responded as follows regarding the reasons for revocation:

- Gender dysmorphia/transgender
- Financial difficulties
- Safe country for transgender
- Religious freedom/member of the OTO Thelema

*See id.* at 11.

Respondents also included a declaration with their Return that states that ICE ERO (enforcement and removal operations) identified Ghana as a third country for removal the day before Petitioner's detention, and that Petitioner was not given a Third Country Notice of Removal "because the Department of State and ICE ERO has received diplomatic assurance from the Ghanan government that the Petitioner will not be persecuted or tortured by the government of Ghana and these assurances have been deemed credible." ECF No. 6-2 ¶¶ 8–9. Thus, according to Respondents, they "had scheduled Petitioner for a removal flight to Ghana but [have] removed Petitioner from the manifest for the flight as a result of this habeas petition." ECF No. 6 at 2. At the time of the Return, Respondents stated that "ERO is prepared to remove the Petitioner [to Ghana] via an ICE charter flight on or before June 1, 2026, once the stay [imposed in this case] is lifted." ECF No. 6-2 ¶ 10.

However, Petitioner indicates in their traverse that ICE has still never directly informed them that it intends to remove Petitioner to Ghana. *See* ECF No. 7-1 ¶¶ 4–6. Petitioner has also requested a credible fear interview because they fear persecution in Ghana, or that Ghana would subsequently return Petitioner to Nigeria. *See id.* ¶ 5; ECF No. 7 at 10; ECF No. 1 at 28 ¶ 3.

## LEGAL STANDARD

A federal prisoner challenging the execution of their sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or

4

26-CV-3104 JAO (JLB)

removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that their current detention is illegal because: (1) ICE failed to comply with its own regulations before re-detaining Petitioner, and/or (2) it violates *Zadvydas v. Davis*, 533 U.S. 678 (9th Cir. 2001) and 8 U.S.C. § 1231 as there is no reason to believe that Petitioner's removal is likely in the reasonably foreseeable future. *See generally* ECF No. 1 at 9–19. Petitioner also argues that if Respondents become able to remove Petitioner to a third country, Petitioner is entitled to adequate notice and an opportunity to be heard, which has not been afforded to non-citizens under ICE's current policy. *See id.* at 19–23. Respondents contend that the cited regulations don't apply to Petitioner's situation and that in any event Petitioner's removal to Ghana is reasonably foreseeable. *See generally* ECF No. 6 at 2–8. The Government fails to respond to Petitioner's argument regarding notice and opportunity to be heard before any removal to a third country.

The Court concludes that ICE violated its regulations in re-detaining Petitioner and that ICE's attempt to remove Petitioner to Ghana or any third country without notice violates due process. As such, the Court GRANTS the Petition.

### A.   Regulatory Violation

#### 1.   Applicable Law

When a non-citizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90)

26-CV-3104 JAO (JLB)

pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). "If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." *Id.* § 1231(a)(3).

"Once ICE releases a non-citizen on supervised release, ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Duong v. Noem*, 815 F. Supp. 3d 1155, 1160 (S.D. Cal. 2025) (internal quotation and citation omitted). The regulations that "govern release and revocation of release of noncitizens subject to a final order of removal, are 8 C.F.R. §§ 241.4 and 241.13." *Tan-Gutierrez v. Noem*, 2026 WL 194747, at *3 (S.D. Cal. Jan. 26, 2026). ICE may re-detain a non-citizen released on an order of supervised release "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." *Id.* § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of the reasons for revocation" and be afforded "an initial informal interview promptly after his return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). The non-citizen may "submit any evidence or information that [they] believe[] shows there is no significant likelihood [they may] be removed in the reasonably foreseeable future, or that [they] ha[ve] not violated the order of supervision." *Id.*

### 2. Analysis

Respondents first argue that the re-detention regulations in 8 C.F.R. § 241 don't apply to Petitioner's situation because Petitioner was never detained at or after the time their removal order became final. *See* ECF No. 6 at 6–7. In other words, according to Respondents, Petitioner was not *re*-detained. The Court finds this argument flimsy at best and belied by the facts in the record.

26-CV-3104 JAO (JLB)

Most glaringly, the Notice of Revocation of Release that Respondents submitted as evidence with their Return states, "Your release has been revoked *pursuant to 8 C.F.R. § 241.13(i),*" one of the regulations Respondents argue here is inapplicable.  ECF No. 6-1 at 9 (emphasis added).  Further the Revocation of Release notes that Petitioner's "*release on the order of supervision (OSUP) issued to [Petitioner] on or about 02/01/2018 is hereby revoked.*"  *Id.* (emphasis added).  Thus, even if Petitioner was not placed into custodial detention again after their removal order became final in November 2017, the Government considered Petitioner "released" on certain conditions.[2]

Further, the only case that Respondents cite in support of their argument bears little resemblance to this instant case.  *See* ECF No. 6 at 7 (citing *Lin v. Francis*, 2025 WL 3751855, at *3 (S.D.N.Y. Dec. 29, 2025)).  In *Lin*, the petitioner was ordered removed in absentia and had no contact with ICE in the ensuing 12 years before he was detained.  *See Lin*, 2025 WL 3751855, at *1–2.  That meant that the petitioner was not subject to ICE's conditions of supervised release after being ordered removed.  *See id.* at *3.  By contrast, Petitioner here has been subject to some form of supervised release since 2017 – either on bond prior to their order of removal, *see* ECF No. 6-2 ¶ 2, or on OSUP or ISAP since at least February 2018, *see* ECF No. 6-1 at 9; ECF No. 1 at 28 ¶¶ 4–5.  Indeed, Petitioner complied with their conditions such that Respondents do not contend they may detain Petitioner based on any violation of their release.  *See* ECF No. 6-1 at 9.  As such, the Court has no trouble concluding that the regulations apply and Court turns to whether Respondents complied with the the re-detention regulations in 8 C.F.R. § 241.

Petitioner argues that Respondents violated § 241.13(i) by:  (1) failing to give Petitioner proper notice of the reasons for re-detaining them, (2) not allowing Petitioner a chance to contest detention during the informal interview, and (3) neglecting to explain any purportedly changed circumstances that made removal reasonably likely since—at

---

[2]  Because the Court concludes that Respondents re-detained Petitioner, it views the Petition through the lens of the re-detention regulations rather than the *Zadvydas* burden-shifting framework.  *See Vu v. Noem*, 2025 WL 3114341, at *5 (E.D. Cal. Nov. 6, 2025) (citing *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025)).

26-CV-3104 JAO (JLB)

the time of the filing of the Petition—ICE had not "informed Petitioner of where and when they intend to remove Petitioner and there does not appear to be any changed circumstances that would indicate otherwise." ECF No. 1 at 18. Respondents do not argue that they complied with the regulations but rather assert that Petitioner suffered no prejudice on account of any violations. *See* ECF No. 6 at 7–9. The Court concludes that Respondents violated the regulations, which are designed to protect due process, and thus that Petitioner's detention is unlawful.

Under the circumstances of this case, Petitioner did not receive sufficient notice of the reason for their re-detention. Petitioner declares that when they were taken into custody, the officers initially told Petitioner that they had an aggravated felony, which was not true. *See* ECF No. 1 at 28 ¶ 6. After clearing up that mistake, ICE reprinted the Notice of Revocation of Release and said Petitioner would be removed to a third country, but did not tell Petitioner which country. *See id.* The Notice of Revocation of Release itself merely states "[c]ircumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future," without indicating that Respondents were attempting to remove Petitioner to Ghana. *See* ECF No. 6-1 at 9. Put simply, based on the record, the full extent of notice that Petitioner received regarding their re-detention was the single boiler plate sentence that circumstances had changed.

Courts routinely find that such minimal explanations for re-detention do not provide sufficient notice and therefore violate the re-detention regulations. *See, e.g.*, *Duong v. Noem*, 815 F. Supp. 3d 1155, 1161 (S.D. Cal. 2025); *Xayakesone v. Noem*, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025); *see also Gutnik v. Bondi*, 2026 WL 700546, at *2 (C.D. Cal. Mar. 5, 2026) ("[C]ourts in this district and across the country have held that such vague, boilerplate statements are insufficient notice."); *M.P.P.P. v. Santacruz, Jr.*, 2026 WL 1601908, at *2 (C.D. Cal. June 1, 2026) (granting habeas petition where the notice of revocation "identified no concrete facts supporting revocation and did not specify the third country to which ICE expected to remove Petitioner").

26-CV-3104 JAO (JLB)

One case from this district has considered an almost identical statement in a notice of revocation of release as the one at issue here and concluded that it did not satisfy the notice requirements. *See Tan-Gutierrez v. Noem*, 2026 WL 194747, at *1 (S.D. Cal. Jan. 26, 2026) ("The Notice of Revocation of Release stated: 'This decision has been made based on a review of your file and/or your personal interview on account of the changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.'"). That case explained:

> ICE's conclusory explanation for revoking Petitioner's release "did not offer him adequate notice of the basis for the revocation decision such that he could meaningfully respond at the post-detention informal interview." *Diaz v. Wofford*, Case No. 1:25-CV-1079 JLT EPG, 2025 WL 2581575, at *8 (E.D. Cal. Sept. 5, 2025) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14 (1978) ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing.")). The document Respondents point to as evidence of notice indicate that there was "a review of [Petitioner's] file" and that "ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future." (Doc. 7-1 at 4.) But "[s]imply to say that circumstances had changed or there was a significant likelihood of removal in the foreseeable future is not enough." *Sarail A. v. Bondi*, — F. Supp. 3d —, 2025 WL 2533673, at *10 (D. Minn. Sept. 3, 2025). "Petitioner must be told what circumstances had changed or why there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition ...." *Id.* (emphasis in original); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, Case No. 3:25-cv-02488-RBM-DEB, 2025 WL 2998376, at *6 (S.D. Cal. Oct. 24, 2025) (granting habeas petition where the petitioner "could not have meaningfully responded to the proffered reasons for revocation when he had not yet even been informed of those reasons").

*Id.* at *3. The Court adopts that reasoning here and concludes that Respondents failed to proffer sufficient notice to Petitioner.

That lack of notice similarly rendered Petitioner's informal interview inadequate. Thus, "while ICE agents did conduct an interview immediately after detaining Petitioner, this interview could not have provided Petitioner with 'an opportunity to respond to the

reasons for revocation stated in the notification,' 8 C.F.R. § 241.13(i)(3), because there was no notification." *Arostegui-Campo v. Noem*, 2025 WL 3280886, at *3 (S.D. Cal. Nov. 25, 2025) (collecting cases); *see also Villalobos Sanchez v. Noem*, 2026 WL 446242, at *3 (S.D. Cal. Feb. 17, 2026) ("A failure to provide meaningful notice begets a failure to provide a meaningful opportunity to respond."). As other courts have pointed out, this is often true when the informal interview occurs immediately after detention because the haste effectively prevents the detainee from being able to gather and present any evidence to challenge their detention. *See Kiwana v. LaRose*, 2026 WL 102661, at *6 (S.D. Cal. Jan. 14, 2026)*; see also Abdullah v. Noem*, 2026 WL 559774, at *3 (S.D. Cal. Feb. 27, 2026) ("Conducting the interview on the same day Petitioner was detained without any advance notice and no opportunity to obtain documents or provide a thorough written response denies Petitioner the ability to meaningfully respond to the reasons for his revocation." (citation omitted)).

Turning to Respondents' argument that failure to comply with the re-detention regulations doesn't prejudice Petitioner or justify habeas relief, the Court follows the weight of authority and concludes that Respondents' violations render Petitioner's detention unlawful. *See, e.g.*, *Rokhfirooz v. Larose*, 804 F. Supp. 3d 1095, 1099–1100 (S.D. Cal. 2025); *Tan-Gutierrez*, 2026 WL 194747, at *4. "Although not every violation of a regulation rises to the level of a due process violation, certain regulations may in fact be mandated by the Constitution or federal law. That is, some regulations protect due process." *United States v. Raya-Vaca,* 771 F.3d 1195, 1205 (9th Cir. 2014) (internal quotation marks and citation omitted), *abrogated on other grounds by Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020). Courts have concluded that the re-detention regulations in § 241.4 and 241.13 are precisely those types of regulations intended to safeguard due process. *See Azzo v. Noem*, 2025 WL 3535208, at *6 (S.D. Cal. Dec. 10, 2025). As such, it's no surprise that "[t]he great weight of district courts have determined that where ICE fails to follow its own regulations in revoking release, the detention is

unlawful and the petitioner's release must be ordered." *Id.* (internal quotation marks and citation omitted).  The Court here concludes the same and GRANTS the Petition.[3]

**B.      Third Country Notice**

Petitioner argues Respondents' current policies regarding notice to be given to non-citizens facing removal to a third country violate the Due Process Clause, the Convention Against Torture, and implementing regulations.  *See* ECF No. 1 at 22–23. Specifically, Petitioner cites ICE's 2025 memo, which takes the position that ICE need not provide notice before removing a citizen to a third country "[i]f the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible." *See id.* at 22; *see also id.* at 52–53 (copy of the memo).  Of course, when Petitioner filed their Petition, they didn't know that Respondents indeed are attempting to remove Petitioner to a third country without notice. *See* ECF No. 6-2 ¶ 9 ("A Third Country Notice of Removal Ghana was not provided to Petitioner because the Department of State and ICE ERO has received diplomatic assurance from the Ghanan government that the Petitioner will not be persecuted or tortured by the government of Ghana and these assurances have been deemed credible."). So, in their Traverse, Petitioner emphasizes that due process requires sufficient notice before removal to a third country.  *See* ECF No. 7 at 11.  The Court agrees with Petitioner.

As mentioned above, Respondents do not explicitly address Petitioner's arguments regarding notice of removal to a third county, but regardless the Court follows the bulk of district court cases that have concluded that the procedures laid out in the ICE memo contravene Ninth Circuit precedent and likely violate due process.  *See Azzo*, 2025 WL

---

[3]  Even if Petitioner needed to establish prejudice to obtain relief, they satisfy that burden.  *See Tan-Gutierrez*, 2026 WL 194747, at *4.  This is especially true because of Respondents' attempt to remove Petitioner to a third country without notice, as the Court explains below.

26-CV-3104 JAO (JLB)

3535208, at *7–8; *Esmail v. Noem*, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). *Azzo* succinctly summarizes recent case law that the Court finds persuasive:

> As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, — F. Supp. 3d —, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 2025 WL 2419288, at *18 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).
>
> The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured . . . the alien may be removed *without the need for further procedures*." *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the alien is afraid of being removed to that country." *Id.* This "forces the noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F.3d at 1041).

*Id.* at *7–8. The Court adopts the reasoning and conclusion of *Azzo*, and those cases on which it relies. *See also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1114–16 (W.D.

Wash. 2025); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1186–89 (E.D. Cal. 2025); *Esmaeili v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026).

The facts of this case demonstrate the dangers of the policies outlined in the 2025 ICE memo.  Petitioner was detained and apparently scheduled to be put on a flight without knowing which country they were to be sent to and without having an opportunity to challenge their removal to a country where they may face persecution.

Thus, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1).  Accordingly:

1.  Respondents are **ORDERED** to immediately release Petitioner from custody under the prior conditions of supervision;

2.  Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.

3.  Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, 2025 WL 1453640 (D. Mass. May 21, 2025).

The Parties are **ORDERED** to file a Joint Status Report by June 15, 2026, confirming that Petitioner has been released.  As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

///

///

///

///

///

26-CV-3104 JAO (JLB)

**IT IS SO ORDERED.**

Dated:  June 8, 2026

Jill A. Otake
United States District Judge

26-CV-3104 JAO (JLB)